HANLON, JUDGE:
Claimant seeks $500,000.00 in a wrongful death action. Her husband, John R. Dimmick, died as the result of an accident which occurred on December 20, 1985. Claimant alleges that respondent was negligent in that having been notified, prior to the accident, of the existence of a hazardous condition at the accident site, the respondent took inadequate precautionary measures to warn the traveling public of the danger.
The claimant and her late husband were traveling north in their 1981 Ford Ranger truck on Interstate 77 just south of the Ripley/Route 33 Interchange. Mr. Dimmick was driving. After having ascended a hill, the Dimmicks started down a long straight stretch of roadway, which unbeknown to them, was icy. Mr. Dimmick lost control of his pickup and it turnéd over. Neither party was seriously injured, and they exited their vehicle and joined others on a nearby hill. Mr. Dimmick decided to return to his vehicle to secure his heart medicine and some other items. Another vehicle, a 1984 Chevrolet S-10 truck driven by Lewis Wayne Davis, slid down the hill and crashed into the claimants' overturned truck striking Mr. Dimmick between the two vehicles. Mr. Dimmick was pronounced dead at Jackson General Hospital.
Several employees of respondent testified concerning respondent's highway operations on December 20, 1985. Mr. James Vernon Kiser, maintenance crew supervisor for respondent, testified that the department's records established that the road was treated with salt three times on the day of the accident. Treatment commenced at 7:00 a.m. and concluded at 8:50 p.m. The records indicated that five tons of salt were placed on the section of highway between the Ripley and Fairplain Interchanges.
*95 Charles Taylor, an Operator II for respondent, operated a truck and spreader on the accident date. He stated that the spreader broke down at milepost 137 which was at the top of the hill, south of the accident. He testified that the road was becoming slick when he went over the hill. It took approximately one hour to repair the spreader. Mr. Taylor then returned to the place on the highway where the spreader had broken down and proceeded to treat the hill. He stated that he had observed no accidents at the time, although he did recall seeing claimant's vehicle. Mr. Taylor stated that he did not notify the police that the road was becoming slick.
Deputy Sheriff Grover Anderson, the investigating officer of the accident, described what he observed. He stated that before coming from Fairplain, the road was wet. Then, as a driver cleared the top of the hill, ice was present which was not visible to the driver. "It still looked like it was a wet road, but it was a glare of ice, ... ." The Dimmick truck hit the ice, slid off the highway, and struck the guardrail and turned over. The Davis Chevy S-10 truck likewise struck the ice, slid off the road stroking the Dimmick truck, and came to rest approximately 1/3 on top of the Dimmick truck which was on its top against the guardrail. Mr. Dimmick was pinned between the two trucks, according to Mr. Anderson.
The driver of the other truck, Lewis Wayne Davis, gave his version of the accident. He and his wife and two sons were going to Marion, Ohio, on vacation. They had come from their residence in North Carolina, and were traveling north on Interstate 77. Rain had developed at approximately 4:30 p.m. on the afternoon of December 20, 1985. They noted the presence of a fire truck, and Mr. Davis lowered his speed. His truck started to slide when it reached the crest of the hill. In an attempt to curtail the slide, he tapped his brake. This was unsuccessful and the vehicle slid sideways. He noted a man standing beside a truck, but he did not see Mrs. Dimmick. The left read of his truck hit the Dimmick truck. The Dimmick truck was upside down, and Mr. Davis’ truck struck the rear of the driver's side of the Dimmick truck. He noted that his vehicle slid in the same groove in which the Dimmick vehicle had slid. He described the roadway as being "solid ice."
Mrs. Dimmick stated that the Davis truck struck her from her right side and knocked her to the pavement. She testified that she was standing near the front of her truck and that the Davis truck hit the Dimmick truck with enough force to move it. She came to this conclusion because Mr. Dimmick was underneath his own truck after the accident. Her recollection of the events differs in some respect with Mr. Anderson's account of the accident.
While the Court sympathizes with the claimant's plight in the loss of her husband, it is unable to establish negligence on the part of the respondent. Although there are discrepancies in the accounts of the accident, there is no disagreement that there was an unusually icy condition present on Interstate 77. The record indicates that the road in question had been treated on the day of the accident.
The respondent was treating the condition in its ordinary manner when Mr. Taylor's spreader broke. As a result, this particular section of highway was untreated for approximately *96 one hour. There is no evidence to indicate that this breakdown was the result of negligent equipment maintenance or that the repairs were not accomplished as quickly as possible.
The only possible negligence shown was the failure of Mr. Taylor to advise his supervisor or someone in authority to close the highway until the conditions could be corrected. However, it must be noted that Trooper Bright, who was patrolling the highway and eventually closed it, testified:
"It was just in a matter of a few minutes when the rain hit, the hill was — people were traveling coming down the hill without any problem at all, and then just all of a sudden the temperature dropped or the ice started sticking on the road or whatever. It wasn't something that built up. It was just, boom, it was slick, and there wasn't any warning."
Under the extraordinary circumstances which existed, the Court finds no negligence in respondent's conduct, and for that reason, the Court is of the opinion to, and must, deny the claim.
Claim is disallowed.
Judge Baker and Judge Steptoe did not take part in the hearing or decision of this claim.